[No. 16166. Department One. June 10, 1921.]

## HAZEL DANIEL, *Respondent*, v. J. I. DANIEL, *Appellant*.[1]

REFERENCE (2)—COMPULSORY REFERENCE — STATUTES — VALIDITY. Rem. Code, § 369 *et seq.*, expressly providing that a compulsory reference may be ordered by the trial court where the issues involve a long account on either side, does not contravene Const., Art. 4, §§ 1, 6, 23, creating courts, defining their jurisdiction, and providing for the appointment of court commissioners.

COURTS (2)—JURISDICTION—NATURE AND SOURCE. Const., Art. 4, § 6, defining the jurisdiction of the superior courts, does not purport to control the manner in which such courts shall exercise jurisdiction, but this is left as a prerogative of the courts and of the lawmaking power, which can be lawfully exercised in any manner which the constitution does not directly prohibit.

ACCOUNT (7)—DEFENSES—PROFITS FROM ILLEGAL TRANSACTIONS. The fact that profits arising from the use of premises were derived largely from their lease for immoral purposes would not deprive a part owner of the premises of a right to an accounting after the transaction had been completed and closed, where such part owner had not been a party or privy to the illegal transaction.

SAME (14)—EVIDENCE (75-77)—SECONDARY EVIDENCE—GROUNDS FOR ADMISSION—FAILURE TO KEEP BOOKS. In an action for an accounting for moneys collected for plaintiff's benefit and wrongfully withheld, defendant cannot complain of the indirect and circumstantial character of the evidence of moneys received, where he kept no books of account showing either the gross earnings of the property or the cost of its upkeep during the period of the accounting.

INTEREST (5, 7)—ACCOUNTS—UNLIQUIDATED DEMANDS. The rule that interest is not allowed upon unliquidated demands is inapplicable where a definite sum was collected by defendant during a term of years, of which sum plaintiff was entitled to a certain share; and it was proper for a referee, in stating the account by yearly periods, to allow interest on the balances from the end of each yearly period down to the time of the accounting.

SAME (5)—ACCOUNTS. Under Rem. Code, § 6250, providing that every forbearance of money shall bear interest at a fixed rate, recovery of interest is authorized where one fails to account to another for moneys collected in the latter's behalf.

[1]Reported in 198 Pac. 728.

COSTS (48)—REFEREE'S FEES. An allowance of a referee's fees as costs under a statute therefor does not deprive a litigant of any constitutional right, inasmuch as costs are a part of the burden of litigation.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered July 16, 1920, upon findings in favor of the plaintiff, in an action upon an accounting taken by a referee appointed by the court. Affirmed.

*Cyrus Happy* and *O. C. Moore,* for appellant.

*George W. Belt* and *Fred M. Williams,* for respondent.

FULLERTON, J.—This is an appeal from a judgment entered upon an accounting. The case prior hereto was before us on another aspect, and will be found reported in *Daniel v. Daniel,* 106 Wash. 659, 181 Pac. 215. In the cited case, we affirmed the trial court, which adjudged that the respondent was the owner of an undivided one-twelfth interest in certain real property situated in the city of Spokane, and was entitled to an accounting for a one-twelfth interest in the rents, issues and profits thereof during the time her interests were withheld from her by the appellant. The amount found to be due was the sum of twenty-four thousand five hundred and thirty dollars, and for this sum the judgment appealed from was entered.

After the cause had been remanded on the first appeal, the trial court appointed a referee to take the accounting. It is contended that this was beyond the power of the trial court, and that, in consequence, all proceedings had thereunder are null and void. In the language of the appellant's learned counsel:

"Our constitution does not provide for the appointment of a referee, but clearly contemplates that all

judicial proceedings shall be either in one of the courts provided by the constitution or before a court commissioner, for the appointment of which provision is made by the constitution. We·therefore contend that the order of reference, made without consent of appellant, and all proceedings thereunder are illegal and without judicial force or effect.''

The provisions of the constitution cited as the foundation for the contention are §§ 1, 6, and 23, of article 4, of that instrument. The first of these sections vests the judicial power of the state in a supreme court, superior courts, justices of the peace and such inferior courts as the legislature may provide. The second of the sections defines the jurisdiction of the superior courts, and the third empowers the superior court to appoint court commissioners, and defines their powers and duties when so appointed. We cannot think these sections have a bearing upon the question suggested. They but create the courts and define their jurisdiction; in no way do they purport to regulate or control the manner in which the courts shall exercise jurisdiction. The latter is left as a prerogative of the courts themselves and of the law-making power, and can be lawfully exercised in any manner which the constitution does not directly prohibit. The legislature has acted on the matter. By the code (Rem. Code, § 369 *et seq.*), it is expressly provided that a compulsory reference may be had where the issues involve a long account on either side. It is true the statute was actually enacted prior to the formation and adoption of the constitution, but that instrument itself provided (§ 2, art. 27), that ''All laws now in force in the territory of Washington which are not repugnant to this constitution shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature. . ''

The law has not expired by any limitation nor has it been altered or repealed by the state legislature.

We are clear also that the statute is not repugnant to the constitution. To refer a cause, involving the taking of an account, to a master has, from the earliest times, been the recognized practice of the courts of chancery, and in all of the American states to which our attention has been directed, where the legal and chancery powers are exercised by the same tribunal, statutes have been enacted authorizing such a reference. These statutes, with substantial uniformity, have been upheld by the courts. In this state the practice has been repeatedly exercised since the adoption of the constitution, and in at least two instances we have held a compulsory exercise of the power within the province of the court. *Lindley v. McGlauflin,* 57 Wash. 581, 107 Pac. 355; *Poultry Producers Union v. Williams,* 58 Wash. 64, 107 Pac. 1040, 137 Am. St. 1041. In neither of these cases, it may be conceded, was the precise question suggested, but we cannot think that this fact destroys the cases as authority. We cannot conclude therefore that the court acted without its powers in directing a compulsory reference.

In the early part of the period over which the appellant was compelled to account for the profits of the premises, and the period during which the greater gains therefrom were derived, the premises were leased to women engaged in the practice of prostitution to be used for such practices. It is urged that this use of the premises was contrary to public morals, and in consequence the court should not compel an accounting for profits so derived, as to do so would be in effect to recognize and enforce an illegal transaction. There are courts which maintain the principle that a division of

profits arising from an illegal or immoral transaction will not be enforced between participants therein, even though the transaction has been completed and closed, and nothing is asserted but the title to money which has arisen from the transaction. But this conclusion is opposed by some courts, if not a majority, and we have heretofore aligned ourselves with the opposing courts. *McDonald v. Lund*, 13 Wash. 412, 42 Pac. 348, 52 Am. St. 57; *Standard Furniture Co. v. Van Alstine*, 31 Wash. 499, 72 Pac. 119; *Stirtan v. Blethen*, 79 Wash. 10, 139 Pac. 618, 51 L. R. A. (N. S.) 623.

We cannot, however, concede that the present case falls within the rule sought to be invoked. The respondent was, in this instance, in no sense a party or privy to the illegal transaction through which the profits she seeks to recover were gained. At the time they were gained the appellant was holding and managing the property as his own, without recognition of any right therein in the respondent, and it was wholly because of his individual act that the property was put to an immoral use. To require him to account for the profits gained is not, therefore, to enforce an illegal transaction to which the respondent was at one time a party; it is but to require him to account for money acquired by the wrongful use of her property. To refuse to require the accounting would be to punish the innocent rather than the guilty party, and this is not the purpose of the rule relied upon. Its purpose is to discourage illegal transactions, and when this purpose is better subserved by recognizing and enforcing the transaction than it is by ignoring it, courts have never hesitated so to do.

The appellant next questions the amount of the recovery recommended by the referee and confirmed by the

court, contending that the recovery is too large. He also objects to much of the evidence introduced by the respondent to establish the amount of the recovery, contending that it is remote and of a hearsay nature. But neither of these contentions requires extended dis-cussion. The evidence as we read it tends reasonably to support the amount of the recovery, and the evidence, by which the amount of the recovery was sought to be established, was the best evidence of which the case from its nature was susceptible. The appellant kept no books of account showing either the gross earnings of the property or the cost of its upkeep during the period of the accounting, and he is not in a position to com-plain because the evidence of the respondent was more or less indirect and circumstantial. Since it was his duty to account, and since his withholding of the res-pondent's share of the earnings was wrongful, courts of equity do not in such cases (in the language of Mr. Jus-tice Story) "proceed upon the notion that strict jus-tice is done between the parties, but upon the ground that it is the only justice that can be done, and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal."

The report of the referee states the account by yearly periods, and allows interest to the respondent on the balances found, at the legal rate, from the end of each yearly period down to the time of the accounting. It is contended that the allowance of interest is unauthor-ized; the argument being that the demand was unliqui-dated and that interest is not recoverable on unliqui-dated demands. But the case falls within the principle of the case of *Modern Irr. & Land Co. v. Neely,* 81 Wash. 38, 142 Pac. 458, in which we held the rule con-tended for inapplicable. There the plaintiff had made the defendant its exclusive sales agent for the sale

of certain of its land. During the continuance of the contract sales were made aggregating large sums which were received by the defendant. No regular accountings were had, the defendant, at first frequently, but latterly at long intervals, turning over to the plaintiff sums which he claimed balanced the account. The action was begun at the close of the relationship, the plaintiff contending that the defendant had retained moneys which properly belonged to it. The trial court found there was a large sum due the plaintiff, and in casting the account struck quarterly balances, and allowed interest on such balances from each quarterly period down to the time of the entry of the judgment. On the appeal it was contended, as it is contended here, that the demand was unliquidated and that interest is not allowable on unliquidated demands. Answering the objection we said:

"It is true, of course, as a general rule, interest is not allowed upon unliquidated demands. This rule, however, like nearly all general rules, has its exceptions. Courts will not hesitate to make it yield to the equities of a given case. . . . The evidence was conflicting upon these points, but a consideration of the entire record convinces us that the whole difficulty arose from the remissness of the defendants in the matter of accounting at reasonable intervals. In such a case, it would be most inequitable to deny interest on balances cast at reasonable intervals, the means for determining such balances being always at hand." *Modern Irr. & Land Co. v. Neely, supra.*

So in this case, there was a definite sum actually collected by the appellant, of which the respondent was entitled on its collection to a certain share. It was the appellant's duty to account to her for this share. He failed to so account, and failed even to keep a definite record of the amounts collected. Manifestly it would

be inequitable to say that he has, by his breach of duty, relieved himself from paying interest on such sums as can now be ascertained he has wrongfully withheld.

It is also argued that interest is not a creation of the common law but is purely of statutory origin, and that we have no statute authorizing the recovery of interest in cases of this sort. But if it be true that the asserted principle is the now applicable rule, we think there is such statutory authority. By the code (Rem. Code, § 6250) it is provided that every loan or forbearance of money shall bear interest at a fixed rate, and there was here, clearly, a forbearance of money.

The court allowed the referee fees based on the rate fixed by statute. Objection is made to this on the ground that the statute is unconstitutional. The argument made in support of the contention is ingenious, but we cannot regard it as tenable. The case of *State ex rel. Rochford v. Superior Court,* 4 Wash. 30, 29 Pac. 764, on which the principal reliance is placed is not in point. There the trial court sought to charge to the county the fees of a stenographer appointed to take the testimony on a trial held before it, and the right was denied because of want of statutory authority. It was not denied that the legislature could provide for a stenographer and make his fees payable from county funds. Costs are a part of the burden of litigation, and no litigant is deprived of a constitutional right by statutes which impose such costs upon him.

Other questions are raised and discussed in the briefs, but these, as we view them, were foreclosed by the judgment in the principal case, and cannot again be considered.

The judgment is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and HOLCOMB, JJ., concur.